## GRAYDON *v.* STOKES.

1. An attorney at law has a right to be paid for professional services rendered another attorney ; where there is no express contract, the law will imply one. The fact that attorneys sometimes from courtesy render services gratuitously to their brother attorneys does not affect this legal right.
2. An exception, unsupported by any evidence in the case, not sustained.
3. Whether the services were rendered, and their value, were matters of fact decided by the jury, and no appeal lies.

Before PRESSLEY, J., Greenville, March, 1885.

The opinion states the case.

*Mr. E. F. Stokes,* for appellant.

*Mr. G. G. Wells,* contra.

March 27, 1886.   The opinion of the court was delivered by MR. JUSTICE MCGOWAN.   This action was brought by Ellis G. Graydon, of the Abbeville bar, against the defendant, who is also an attorney at law of Greenville, upon an open account of

$400 for professional services rendered the defendant at Green-ville, which was credited with $17.50 and the plaintiff's hotel bills at Greenville. The defendant answered, denying the allegations of the complaint in the manner and form stated, and also that any account had ever been presented for payment. At the conclu-sion of plaintiff's testimony the defendant moved for a non-suit on the ground that the plaintiff had not shown that there was any contract, express or implied, that any fee was to be paid for his services, beyond what might be given gratuitously by the defendant; and according to plaintiff's own testimony it appeared that he was in partnership with Mr. Armstead Burt, and the action was not brought in the name of Burt & Graydon, but in the name of Ellis G. Graydon alone, and must fall.

The presiding judge refused the motion, saying: "If the court understands the testimony of Mr. Graydon, such as Mr. Burt should earn outside the county (of Abbeville) was his, and such as Mr. Graydon gets outside the county is his; of course, they are not attorneys outside of the county, and when services are rendered an attorney has to be paid for it." The plaintiff had a verdict for $382.50. The defendant moved for a new trial on the ground of subsequently discovered evidence, which was refused, and the defendant appeals to this court upon the follow-ing grounds:

I. "It is respectfully submitted that his honor erred in not granting a non-suit, inasmuch as the testimony of plaintiff and his witnesses showed that the action should have been brought, if at all, in the name of Burt & Graydon, and not in the name of Graydon alone.

II. "Because his honor erred in not granting a new trial, when the affidavit of defendant showed that evidence had been discovered since the trial of the cause which made it clear that Ellis G. Graydon had no right to sue the defendant, and that only Burt & Graydon, or the survivor, should, under the circum-stances, have brought the action.

III. "Because his honor erred in not granting a new trial upon the minutes of the court.

IV. "Because his honor erred in refusing to dismiss the com-plaint, ruling that the law and custom of South Carolina permit-

ted one attorney at law to sue his brother attorney for services rendered in the line of his profession as attorney and counsellor.

V. "Because his honor erred in ruling that the testimony of defendant's witness, tending to show that the services of plaintiff's attorney were of little actual value, was incompetent.

VI. "Because the verdict was contrary to law and the testimony, the records in the cases upon which the complaint was based conflicting with and contradicting the testimony of plaintiff and one of plaintiff's witnesses.

VII. "Because the verdict was excessive in amount, being for $382.50, when it should not have been for more than $50, excluding what had been voluntarily contributed to plaintiff by defendant.

VIII. "Because his honor erred in not calling the attention of the jury to the letter of plaintiff to defendant, which was an implied admission that there was no cause of action in the claim of plaintiff.

IX. "Because his honor erred in not charging the jury that they should weigh very carefully and cautiously the testimony of C. M. Furman and T. Q. Donaldson, inasmuch as their prejudices might unconsciously bias their judgment, the former having testified that he did not admire the defendant, and the latter that he would not make a companion of him.

X. "Because the jury were totally incompetent to grapple with the nice points of law and professional etiquette and custom involved in the case, and blinded by prejudice and argument of counsel. Hence the defendant appeals and asks for reversal or a new trial."

We know of no principle which would exclude the professional services of an attorney from the benefit of the general rule, that services rendered by one at the instance of another should be paid for at their true value, and if there is no express contract to that effect, the law will imply one. Professional services are no less useful than others, whether we regard the preparation necessary to fit one to render them, the importance of the matters with which they are generally concerned, or their real value and importance to those who may engage them. Certainly since the cases of *Duncan* v. *Breithaupt and Huger, as the Executors of Yancey*, and *William Harper* v. *C. E. Williamson*, decided in

1821, and reported in 1 *McCord*, 149 and 156, it has been settled in this State, "that an attorney may rightfully and legitimately charge, by way of counsel fee, a sum proportioned to the value of the services, and which a jury of the country, upon evidence before them, are competent to ascertain and decide upon." This proceeds upon the principle above stated, that where one employs another to render him certain services, and the services are rendered, the law implies a contract on the part of the employer to pay their value.

While there does exist in certain localities at least a "courtesy" among gentlemen of the bar not to charge each other, but when requested by a brother lawyer to render him services in the line of their profession without fee or reward, yet where such "courtesy" exists, it does not touch the legal rights of the parties. The very fact that it is called *a courtesy* indicates that making no charge is exceptional, and that the general rule is to charge. Besides, even where such courtesy is generally practised, we have no doubt that there are certain well grounded exceptions to the rule, and certainly the moment the parties, from any cause whatever, stand upon their rights, there can be no such thing as *courtesy* in the case.

As to the exceptions which complain that the action was improperly brought in the name alone of Ellis G. Graydon, when it should have been in the name of "Burt & Graydon," partners in the practice of the law. The presiding judge says that Mr. Graydon, the plaintiff, proved that he and Mr. Burt were partners in the practice of the law in and for Abbeville County alone; that each was authorised to practise for himself outside of the County of Abbeville, and of course to receive individually the income from such practice on the Circuit. We hear nothing in the case of the employment of Burt & Graydon, or of Mr. Burt, but only of the plaintiff, Mr. Graydon.

Whether the services rendered were valuable, and to what extent, was of course left to the jury, and there is no appeal from their verdict fixing the amount.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.